BREWSTER v. McNAB.

1. SALE UNDER MORTGAGE—TENANCY.—Where one purchases land sold by a mortgagee and receives a deed of conveyance under a power contained in the mortgage, which also contained the provision that any holding of the premises by the mortgagor after such sale and conveyance should be as tenant of the purchaser at a stipulated rent per month, and the mortgagor, remaining in possession, does not dispute a tenancy under such provision, the relation of landlord and tenant between the purchaser and mortgagor is established.

2. LIEN FOR RENT.—Is not rent for agricultural lands, though payable monthly, given a prior lien under the act of 1885, 19 Stat., 146, over the lien given to others for supplies advanced?

3. DISTRESS FOR RENT—LIEN.—A landlord has the right to distrain any property of the tenant found on the demised premises; but does such right give to the landlord a preference over liens created before the distress warrant was levied?

4. RENT—REMOVAL OF GOODS.—A landlord distrained and took into his possession crops made by the tenant on the demised premises, after which these crops were seized under a warrant issued to enforce an agricultural lien, which had been executed after a portion of this rent became due, but before the distress. *Held*, that under the statute forbidding goods or chattels to be taken "by virtue of any execution or any pretence whatsoever," without payment to the landlord of all rent past due within a year, the crops so seized cannot be taken away from the landlord without payment of the rent provided for in this statute. Only result concurred in.

Before IZLAR, J., Barnwell, March, 1891.

Action by J. F. F. Brewster against McNab & Walker.

*Mr. J. J. Brown*, for appellant.

*Mr. B. L. Rice*, contra.

April 21, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. On December 13, 1885, S. L Peacock executed to the "New England Mortgage Security Company" a mortgage of the land described in the complaint, to secure the payment of $1,000, payable on December 1st, 1890, together with interest, &c. The said mortgage contained a power

of sale in case of default in the payment of the money loaned, as also the following clause: "The completion of said sale by conveyance shall entitle the purchaser to immediate possession of the premises, and any holding of the same thereafter by the said Peacock shall be as tenant of said purchaser, at a rent of $30 per month, payable monthly, and said purchaser may at any time determine such tenancy by giving one month's notice to the party in possession, or without such notice in case at any time two months' rent be due and unpaid, and in either of said cases, such purchaser shall have the right to obtain the possession of said premises as in other cases of landlord and tenant, determination of lease," &c. On August 6, 1888, the said premises were sold under the power, and were purchased by the plaintiff herein, and a regular conveyance was executed to him by said Peacock, through his attorney in fact, the said mortgagee, on August 17, 1888.

On February 8, 1890, the said Peacock executed to McNab & Walker an agricultural lien on all the crops made during said year on said plantation, which was duly filed on February 11th, 1890, in the proper office and registered according to law. On July 23, 1890, a demand was made by the plaintiff on Peacock for possession of the premises, or paymenf of the rent. The demand being refused, the plaintiff instituted proceedings for ejectment against Peacock, which were finally dismissed—for what cause does not appear. Afterwards the plaintiff caused a distress warrant to be issued to seize the propery of the said Peacock to satisfy the rent claimed to be in arrear, $270. Under this warrant the plaintiff received cotton, corn, fodder, gathered and ungathered, of the crops of said Peacock, made upon the said plantation during the year 1890. Afterwards, on December 12, 1890, the defendants, McNab & Walker, caused to be issued by the clerk of the court a warrant on their agricultural lien against the said Peacock, directed to the sheriff of the county, commanding him to seize the crops of said Peacock covered by said lien, and after due notice to sell the same, and out of the proceeds thereof pay over to the defendants, McNab & Walker, the sum of $150.31, in extinguishment of the amount due them upon said lien. The sheriff seized the crops which had been pre-

viously taken by the plaintiff under his distress warrant, and after due advertisement sold the same, and now has in his hands the net proceeds arising therefrom, amounting to $96.60. This action is brought by the plaintiff to recover from the defendants the said sum of $96.60.

The cause came on to be heard by his honor, Judge Izlar, who, holding that the lien created by the distress warrant only dated from the time of levying the distress, October, 1890, and at that time there was a vested and subsisting agricultural lien for advances (February 8, 1890) upon the crops of Peacock in favor of defendants, and that under and by virtue of a warrant (December, 1890) issued on this lien for advances, the crops of Peacock raised upon the land were sold—decided that the defendants, McNab & Walker, had a prior and preferred lien upon the crops raised upon the "Buist place" in the year 1890, and dismissed the complaint with costs.

From this decision the plaintiff appeals to this court upon grounds as follows: 1. Because his honor erred in holding that upon the sale of the mortgaged premises and execution of conveyance to the purchaser, the relation of landlord and tenant was not established between the mortgagor, Peacock, and the purchaser, Brewster. 2. In holding that the stipulation in the mortgage for rent was intended merely as a matter of estoppel between the mortgagor and the purchaser of the premises. 3. In holding that plaintiff did not acquire a statutory lien as provided by the act of 1885, upon the crops of Peacock made during the year 1890. 4. In holding that the tenancy existing between Brewster, the plaintiff, and Peacock, the mortgagor, was not such as that contemplated by act of 1885. 5. In holding that there was no renting by the plaintiff to said Peacock of the lands mentioned for agricultural purposes for the year 1890. 6. In holding that the lien created upon the property of the tenant would only date from the time of levying the distress. 7. In holding that McNab & Walker, having the prior and preferred lien, were entitled to priority of payment out of the proceeds of sale of Peacock's crops.

In some respects this is a new question, which we will have to decide without much aid from authorities. Was the relation

of landlord and tenant established between the mortgagor, Peacock, and Brewster, the purchaser? The provision in the mortgage plainly shows that, in case the land was sold and conveyed, it was the intention of the parties that the relation of landlord and tenant should exist between the purchaser and Peacock. It is true that the mere promise to make a lease is not enough; there must be an actual lease. But when the land was sold and conveyed by Peacock himself under the mortgage, which included his agreement, was that not as much an actual lease as if it had been expressly stated in his deed? Peacock does not deny it, and it would seem that, as between him and the grantee, Brewster, the relation of landlord and tenant was established, with all its incidents and liabilities. The defendants had notice, as both the mortgage and deed of conveyance were recorded.

Then what were the rights of the parties under this lease of land? The act of 1885 provides that "the landlord shall have a lien upon the crops of his tenant for his rent in preference to all other liens, * * * and that no writing or recording shall be necessary to create the lien of the landlord, but such lien shall exist from the date of the contract, whether the same shall be in writing or verbal." 19 Stat., 146. If this law applies to the case, there could be no possible doubt about it. It seems that the landlord's lien is preferred to all others. But it is said that this law applies only to rent of land for agricultural purposes, and that the lease here is not of that character, as shown by the same being payable monthly. The act is general in its terms and without qualification, and we do not clearly see that rent for the use of land, the very foundation of all agriculture, is not as much an agricultural advance as supplies of corn, bacon, &c.

But the act of 1885 is recent and has not been construed, and therefore suppose we disregard that act, how will the matter stand? Assuming that the relation of landlord and tenant existed, the landlord had another right entirely distinct from what is called his agricultural rights on the crop made on the leased premises. He had the right, under a law, older than the agricultural lien laws, lately re-enacted, to

distrain any property of the tenant found on the place, whether it was or was not a part of the crop made there.   See *Sullivan* v. *Ellison*, 20 S. C., 484.   This seems to be conceded, but it is suggested that, according to the law of distress, a landlord has no lien for his rent, or any preference over other creditors, until the distress is actually levied; and as the distress in this case was not levied until October, 1890, while the defendants had an agricultural lien on file in the clerk's office, February 8, 1890, they, the defendants, had a prior and superior lien to the landlord. There is some conflict in the authorities as to what precise time the landlord's lien attaches.   This is a very interesting question, which, if we had time, it might be pleasant and profitable to pursue.

But it seems to us that it is not necessarily involved in this case, as, in the view of the court, the matter must be considered as determined by section 1824 of the General Statutes, which declares as follows, that "no goods or chattels whatsoever, lying or being in or upon any messuage, lands, or tenements, which are or shall be leased for life or lives, term of years, at will or otherwise, shall be liable to be taken by virtue of any execution or any pretence whatsoever, unless the party at whose suit the said execution is sued out, shall, before the removal of such goods from off the said premises, by virtue of such execution or extent, pay to the landlord of said premises, or his bailiff, all such sum or sums of money as are or shall be due for rent for the said premises at the time of the taking such goods or chattels by virtue of said execution.   *Provided*, the said arrears of rent do not amount to more than one year's rent," &c.

The rent began to fall due monthly, before the agricultural lien of the defendants was executed.   The distress warrant of the landlord was *levied first*, and there can be no doubt that the defendants had notice. . The property belonged to the tenant, subject only to the liens, and after the distress warrant and notice given to the defendants, it seems to us that, under the above provision, we cannot sanction the taking of the property out of the possession of the landlord, without the rent being first paid as therein required.   *Margart* v. *Swift*, 3 McCord, 378 ; *Ayers* v. *DePrass*, 2 Speer, 370 ; 1 McMull., 194; Harper, 337; 4 Rich.,

248; *In the matter of F. W. Conner*, 12 Rich., 352; *Sullivan* v. *Ellison, supra ; Price* v. *Limehouse*, 4 McCord, 544. Certainly not by execution creditors, and as we suppose not by the holders of an agricultural lien for supplies, which had been filed in the clerk's office before, but was not executed until two months after the distress was levied. Nor does it matter, as we conceive, that the articles distrained were raised on the place. The landlord was not bound to recognize that distinction. The words are absolutely mandatory and controlling, "by virtue of any execution *or any pretence whatsoever.*"

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit for such further orders as may be necessary to carry out the conclusions herein announced.